BYRNE et al. v. WEIDENFELD et al.

Supreme Court, Appellate Division, Second Department. June 8, 1906.)

1. TROVER AND CONVERSION—RIGHT OF ACTION—PLAINTIFF'S RIGHT TO POSSESSION.

In an action for conversion based on detinet, plaintiff must show a right to possession at the time of the conversion.

[Ed. Note.—For cases in point, see vol. 47, Cent. Dig. Trover and Conversion, §§ 119–147.]

2. SAME—PLEADINGS—ISSUES AND PROOF.

In an action for conversion based on detinet, evidence that a third person was entitled to possession at the time of the alleged conversion is admissible under a general denial.

[Ed. Note.—For cases in point, see vol. 47, Cent. Dig. Trover and Conversion, § 212.]

3. SAME—EVIDENCE—ADMISSIBILITY.

Defendants, who were stockholders in liquidation, sent plaintiff a statement of an indebtedness to defendants, against which they stated his securities were held, and the result of correspondence was an acceptance of his offer to pay such sum on a release of his securities. In an action for conversion of the securities because of defendants' failure to deliver them on demand and tender of plaintiff's indebtedness to them, defendants offered to show that they and the plaintiff were joint venturers in schemes requiring money which had been raised on the obligations of the defendants, secured by a pledge of the securities, and that at the time of the alleged conversion the debt secured by such pledge was undischarged, and the pledgee in possession of the pledge. *Held*, that the exclusion of such evidence was prejudicial error.

Appeal from Trial Term.

Action by Frank P. Byrne and others against Camille Weidenfeld and another. From a judgment for plaintiffs, defendants appeal. Reversed.

Argued before HIRSCHBERG, P. J., and JENKS, HOOKER, RICH, and MILLER, JJ.

Edward Lautorbach (Henry L. Scheuerman and Charles L. Craig, on the brief), for appellants.

Edward J. McGuire, for respondents.

JENKS, J. On November 1, 1897, the defendants, a firm of stock brokers then in liquidation, sent a statement to Byrne, showing his indebtedness to it of $600,000, and that it held his securities against such indebtedness. The upshot of interviews and correspondence was an

offer by Byrne to pay that debt if the defendants would deliver his securities to him, and an acceptance of such offer by defendants. At the appointed place and time, November 10, 1897, tender of that debt, as stated by defendants, and demand for the securities was made; but the defendants answered that they were unable to deliver the securities. This action is for a conversion based upon that default. At the close of the case, the court, upon motion of the plaintiff, and in the face of requests for submission, and under exceptions by both the defendants, directed a verdict for the plaintiff for $361,591; the difference between his debt to the defendants and the market value of the securities.

The principal question on this appeal is presented by the ruling in exclusion of testimony offered to establish a defense. The complaint of conversion is, so to speak, based not upon cepit but detinet, and the plaintiff was bound to show an existing right to the immediate actual possession of the securities at the time of the alleged conversion (Smith v. Smalley, 19 App. Div. 519, 46 N. Y. Supp. 277, and authorities cited); and therefore the defendants were entitled to show that at the time of the alleged conversion the immediate right to such possession was in a third person. For, if so, it was not in the plaintiff, and, if not in the plaintiff, he could not complain of such a conversion. Such evidence did not necessarily attack plaintiff's title, but necessarily challenged his then right of immediate actual possession, and thus tended to absolve the defendants from a charge of conversion, and it was in any event admissible under the general denial pleaded by the defendants. Griffin v. Long Island R. Co., 101 N. Y. 348–353, 4 N. E. 740 et seq.; Ontario Bank v. N. J. Steamboat Co., 59 N. Y. 510; Siedenbach v. Riley, 111 N. Y. 560, 19 N. E. 275. Now the version of the defendants that was excluded is that they and the plaintiff were joint venturer's in schemes requiring large sums of money, which had been raised upon the notes and obligations of the defendants secured by the pledge of securities, including the securities of the plaintiff or part of them; that at the time of the alleged conversion such securities were out at such pledge; that the common ventures had proved unprofitable; that the debt behind that pledge was undischarged; and that the pledgee was in possession of the pledge. It is to be noted that the defendants do not assert that this pledge was made by them for their own benefit, perforce of their possession of the bonds and their interest therein as collateral for the debt of the plaintiff to them. If this were the fact, then the tender of that debt and the demand sufficed to charge the conversion upon them; for if then the securities were out of their possession, under such circumstances they were bound at once to regain them. Lawrence v. Maxwell, 53 N. Y. 191. As the interest of the defendants in such securities as collateral for plaintiff's debt to them is not the basis of the pledge by the defendants, of course that debt is not the measure and the limit of any lien of the third party as pledgee that may charge the plaintiff as owner of the securities. With the assent of the plaintiff, the defendants could charge the securities by a pledge, valid against the plaintiff, to the limit of that assent. Lawrence v. Maxwell, supra. If at the time of the alleged conversion they had pledged them within such assent, and certainly for the joint benefit, then, until the debt of the pledgee was tendered or discharged, the

pledgee was entitled to the possession, and not the plaintiff. Lewis v. Mott, 36 N. Y. 395; Thompson v. St. Nicholas Nat. Bank, 113 N. Y., at page 332, 21 N. E. 58; Donald v. Suckling L. R., 12 Q. B. 585; Union Bank v. Laird, 2 Wheat. (U. S.) 390, 4 L. Ed. 269; West T. & Coal Co. v. Kilderhouse, 87 N. Y. 430, 440. The defendants were not precluded from such defense to this action. The case for the plaintiff without the evidence excluded may have justified a direction of the verdict, but the question, of course, is whether such exclusion was right, and, if not, whether it was prejudicial. It may well be that the uncontradicted evidence showed that the defendants agreed to deliver up the securities on payment of a certain sum, and that they failed to do so; but they are not sued for a breach of contract, but for conversion. The plaintiff did not offer to discharge all liens against the securities, but only to pay his indebtedness to the defendants provided they would restore his securities; and the defendants did not undertake to state the extent of the lien, but only the amount of the plaintiff's indebtedness to them upon the securities which they had carried for him. All that was said, written, or undertaken by the defendants may have been entirely consistent with the existing pledge of the securities with others for the obligations of the joint venturers. If the plaintiff was cognizant of the course of the venture, the situation of affairs, and the powers of the defendants to pledge the securities upon his assent, express or implied, and certainly of a pledge accordingly, it was not necessary to inform him of the situation. The letters of the defendants may be read to indicate the existence of such pledge, inasmuch as the plaintiff is informed of the demand for the payment of the obligations against which the securities are held by a third person, and of the threatened sale of them by that person upon the default. On the other hand, while the plaintiff in his conversion based on the detinet was not bound to show facts relevant to a conversion in cepit (Lawrence v. Maxwell, supra), his letters do not express disapproval or surprise or censure at the fact that a third party in possession of the securities threatens a sale thereof.

If it be asked, then, why the defendants, in view of an existing lien, undertook to deliver the securities upon payment of their indebtedness from the plaintiff, which did not in law release the securities from the pledge, it may be suggested that they supposed that they could regain the securities, perhaps by substitution, perhaps by payment of the $600,000 for their withdrawal, although not strictly entitled thereto, and thereafter have found the pledgee inexorable. And it may be asked, on the other hand, why the plaintiff offered to pay the indebtedness if the defendants would restore the securities, provided he knew that he was absolutely entitled to them upon such tender or payment, or else could hold the defendants for a conversion. If he knew or had reason to suppose that the securities were with others subject to such a lien as is asserted by the defendants, he may have counted himself happy upon such a deliverance. If the plaintiff knew of such a lien, or had reason to suppose that it existed under his assent in the common venture, he cannot say that the defendants cannot be heard to assert that lien in defense to this action simply because they stated his indebtedness to them. Upon tender and demand their answer was that they regretted they would be unable to deliver the securities, and they

did not thereby take any distinct ground that precluded them from this defense in conversion. Everett v. Coffin, 6 Wend. 604, 22 Am. Dec. 551. As the evidence in support of the version of the defendants is not before us, we cannot determine whether it is cogent and convincing, or improbable and flimsy. It may carry conviction despite the other evidence; it may invite incredulity upon its face or upon comparison. That is not the question now up. It suffices that we cannot see that the defendants are not prejudiced by the exclusion. I think that the defendants were entitled to offer it, and that the exclusion requires a reversal of the judgment and the granting of a new trial; costs to abide the event.

Discussion of the other interesting questions raised and argued with ability and ingenuity by both of the learned counsel is therefore unnecessary.

Judgment reversed, and new trial granted; costs to abide the event. All concur.